**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             OAKLAND DIVISION

11

12

13    BEN FURTH, an individual,                    CASE No. C 11-00071 DMR

14              Plaintiff,

15        v.                                        **ORDER DENYING PLAINTIFF'S EX
                                                    PARTE APPLICATION FOR**
16    FREDERICK P. FURTH, an individual;            **TEMPORARY WRIT OF**
      THE FURTH FIRM LLP; and DOES 1-100,           **ATTACHMENT AND GRANTING IN**
17    inclusively,                                  **PART PLAINTIFF'S MOTION FOR
                                                    WRIT OF ATTACHMENT**
18              Defendants.

19    _____/

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

I. INTRODUCTION

Plaintiff Ben Furth has filed an Ex Parte Application for Temporary Writ of Attachment (Docket No. 32) and a Motion for Writ of Attachment (Docket No. 36).  As the Court previously stated in its scheduling order, the "Ex Parte Application for Temporary Writ of Attachment," which Plaintiff requests pursuant to Federal Rule of Civil Procedure 65, is more appropriately styled as a Motion for a Temporary Restraining Order, and will therefore be evaluated as such.  Docket No. 42. Plaintiff brings the Motion for Writ of Attachment under California state law by way of Federal Rule of Civil Procedure 64.

The Court has considered the opposition, reply and Defendants' sur-reply to each motion, and the parties appeared for oral argument on May 26, 2011.  For the reasons stated below, the Motion for Temporary Restraining Order was abandoned by Plaintiff and is therefore DENIED. The Motion for Writ of Attachment is GRANTED in the amount of $385,925.40, which is the amount the Defendants concede is owed to Plaintiff under the contract in question.  The Court ordered further briefing on the interest due pursuant to the contract.  The Court will make any appropriate adjustment to the Writ after consideration of the additional briefing.

II. BACKGROUND

Plaintiff sued his father, Frederick P. Furth, and The Furth Law Firm LLP for breach of contract and declaratory relief regarding the amount of attorneys' fees he alleges are due to him from his time as a partner at The Furth Firm LLP.  Compl. at ¶¶ 1, 51-60.  The parties agree on some basic facts.  Plaintiff and Defendant Furth worked together at The Furth Firm LLP, which specialized in class action lawsuits.  Plaintiff separated from the firm in June 2003.  On October 1, 2007, the parties entered into a Settlement Agreement regarding the amount of attorneys' fees payable to Plaintiff for fees generated during Plaintiff's tenure at the firm.  The Settlement Agreement provides, inter alia, that Plaintiff "has a 25% interest in the lodestar created in all FURTH cases from September 1, 1999 to June 30, 2003."  Decl. of Daniel S. Mason ISO Defendant's Opp. ("Mason Decl."), Ex. 1.  Beyond that, however, the parties present differing interpretations of the Settlement Agreement, and different calculations of the amount due Plaintiff under the contract.

In his Motion, Plaintiff seeks a writ of attachment for $3,108,510.76, which he maintains is the balance due under the Settlement Agreement, plus interest and prevailing party fees pursuant to the contract.  The principal amount stems from attorneys' fees awarded in *Savaglio v. Wal-Mart Stores, Inc.* (Cal. Super. Ct., Alameda Cty., No. C-835687), a class action lawsuit litigated primarily by The Furth Firm LLP, along with other counsel.  Plaintiff alleges that, pursuant to the terms of the Settlement Agreement, he is entitled to receive $5,468,355.46 for *Savaglio*, but has only been paid $2,909,844.70 and is therefore owed $2,558,510.76.  According to Plaintiff, the amount owed under the Settlement Agreement should be derived as a percentage of the total gross attorneys' fees that were recovered in *Savaglio* by all plaintiffs' attorneys, and not as a percentage of the fees received only by The Furth Firm LLP.

Plaintiff maintains that this understanding of the Settlement Agreement was confirmed in May 2008, after Defendant Furth transferred management of The Furth Firm LLP's cases, including *Savaglio*, to Zelle, Hofmann, Voelbel & Mason, LLP ("Zelle Hofmann"), under a Case Transfer and Of Counsel Agreement ("Case Transfer Agreement").  Plaintiff asserts that he contacted Defendant Furth and Daniel Mason, a partner with Zelle Hofmann, who confirmed that the Case Transfer Agreement would not "dilute" Plaintiff's interest in any fee award in *Savaglio*.  However, the evidence submitted by Plaintiff on this point is somewhat ambiguous.  Plaintiff's email to Defendant Furth and Mason states in pertinent part: "Fred recently forwarded me a draft of Zelle's agreement to take over numerous Furth Firm cases, including *Savaglio v. Wal-Mart Stores, Inc*.  While I support Zelle in helping in the case given the legion of defense attorneys on the other side, I cannot agree to any dilution of my lodestar interest in *Savaglio*.  Please confirm in writing that your agreement in no way dilutes my interest in *Savaglio*."  Decl. of Ben Furth ISO Plaintiff's Motion ("B. Furth Decl."), Ex. 2.  Defendant Furth's response does not explicitly confirm that Plaintiff's interest in *Savaglio* is not "diluted" by the Case Transfer Agreement; rather, Defendant Furth's email reply states "in answer to your email to me and Dan Mason, the Zelle Agreement does not change your agreement with me regarding Wal-Mart."  B. Furth Decl., Ex. 3.

Additionally, Plaintiff maintains that the calculation of his interest as a percentage of "the total gross attorneys' fees recovered" by *all* plaintiffs' counsel in *Savaglio* was reiterated in the

**United States District Court**
For the Northern District of California

1  declaration of Michael Christian ("Christian Declaration"), which was submitted to the *Savaglio*

2  Court with the fee application pursuant to California Rule of Court 3.769.  Paragraph 12 of the

3  Christian Declaration states in relevant part: "Ben Furth shall receive a percentage of the total gross

4  attorneys' fees recovered as determined by the following formula: ((total lodestar in this case prior

5  to June 30, 2003) divided by (the total lodestar), then multiplied by 25% then multiplied by the total

6  gross attorneys' fees recovered.  Lead class counsel Frederick P. Furth shall receive all attorneys'

7  fees not otherwise accounted for in this paragraph."  B. Furth Decl., Ex. 1.  According to Plaintiff,

8  the formula from the Christian Declaration yields the following results: $9,252,727.00 (the total

9  *Savaglio* loadstar for The Furth Firm LLP prior to June 30, 2003) divided by $22,208,147.00 (the

10  total *Savaglio* loadstar for The Furth Firm LLP and Zelle Hofmann) multiplied by 0.25, multiplied

11  by $52,500,000.00 (the total gross attorneys' fees awarded to all plaintiffs' counsel in *Savaglio*),

12  which equals $5,468,355.46.[1]

13       Plaintiff further maintains that Defendants are bound by the Christian Declaration, through

14  operation of the doctrines of *res judicata* and judicial estoppel, because Defendant Furth and Mason

15  reviewed the Declaration before it was filed, Michael Christian signed the Declaration under penalty

16  of perjury, Defendant Furth and Zelle Hofmann filed the Declaration as co-lead counsel in *Savaglio*,

17  and the Declaration was filed pursuant to California Rule of Court 3.769(b), which requires that any

18  agreement with respect to the payment of attorneys' fees "must be set forth in full in any application

19  for approval of the dismissal or settlement" of a class action.

20

21

22  [1] In common legal parlance, the term "lodestar" refers to an attorney's hourly rate multiplied by the number of hours worked by that attorney.  The term "multiplier" is often used to refer to an upward

23  or downward adjustment to the lodestar.  *See, e.g., Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 978 (2008).  Although the Settlement Agreement uses the word "lodestar," and does not

24  include the word "multiplier," Plaintiff argues that as used in the contract, the term "lodestar" incorporates the concept of a multiplier.  With this in mind, Plaintiff points out that the *Savaglio*

25  court awarded an attorneys' fees multiplier of 2.363997322044281, which is $52,500,000.00 divided by $22,208,147.00.  Applying that multiplier to the pre-June 30, 2003 Furth Firm LLP

26  lodestar and Plaintiff's 25% contractual interest also equals $5,468,355.46 ($9,252,727.00 *2.363997322044281*0.25).  Defendants deny that the Settlement Agreement contemplates a

27  multiplier and object to using any multiplier to calculate the amount owed to Plaintiff.  However, at the same time, Defendants argue that the calculations in a spreadsheet referenced in the Settlement

28  Agreement provide the appropriate formula.  Those calculations appear to incorporate the concept of a multiplier.

In contrast, Defendants maintain that Plaintiff was only entitled to receive $3,295,768.30[2] under the Settlement Agreement, and that he has already been paid more than $2.9 million. Defendants arrive at this number because they assert that Plaintiff's portion should be calculated as a percentage of the attorneys' fees received *by the firm*, and not as a percentage of the total fees awarded *to all counsel* in those cases.  In support of this position, Defendants argue that the Settlement Agreement expressly references and incorporates a method of calculation employed in an Excel Spreadsheet created by The Furth Firm LLP's accountant, Ken Born, and sent to Plaintiff by email.  They further maintain that Plaintiff assented to and accepted payment based on that method of calculation, and that he himself used that calculation to determine amounts owed in cases prior to *Savaglio*.  According to Defendants, neither the Settlement Agreement nor the Excel Spreadsheet calculate Plaintiff's portion based upon the amount of fees received by any law firm other than The Furth Firm LLP.  In fact, Defendants maintain, in each of the approximately 18 prior cases addressed in the Settlement Agreement and Excel Spreadsheet, Plaintiff's interest was calculated as a percentage of the attorneys' fees received only by The Furth Firm LLP.  Defendants argue that, applying the laws governing contract interpretation, the Court cannot consider extrinsic evidence offered by Plaintiff such as emails or the Christian Declaration.  Defendants instead point to a provision of the Settlement Agreement, which states that its terms "may only be altered or amended through a further writing signed by all Parties hereto."  Mason Decl., Exh. 1.

Defendants further posit that Plaintiff was aware that under the terms of the Settlement Agreement other counsel were permitted to share in the *Savaglio* fee award.  Under Defendants' calculation then, as derived from the formula used in the Born spreadsheet, Plaintiff's interest in *Savaglio* is as follows: 0.25 multiplied by 0.46196 (which equals $9,252,727.00 divided by $20,029,202.50, and is the percentage of The Furth Firm LLP lodestar incurred from September 1, 1999 to June 30, 2003) multiplied by $28,537,163.93 (which is total attorneys' fees received by The Furth Firm LLP) for a total of $3,295,768.30.

---

[2] In their opposition papers, Defendants originally argued that they owed Plaintiff $2,972,154.62.  In their sur-reply (see Docket 59, p.9 and fn.6) and at oral argument, Defendants amended the total *Savaglio* fees owed Plaintiff to $3,295,768.30.  At oral argument, Defendants also conceded that they have not yet paid Plaintiff that full amount, and that at this point they still owe him $385,925.40.

United States District Court

For the Northern District of California

1      As for the Christian Declaration, Defendants argue that to the extent the Court considers it,

2 the language indicating that Plaintiff's interest is calculated as a percentage of "the total gross

3 attorneys' fees recovered" was added per Plaintiff's instruction; there is no evidence that Defendant

4 Furth actually reviewed and approved Plaintiff's description of the fee agreement.  In other words,

5 Defendants maintain that the Christian Declaration, which is not signed by either Plaintiff or

6 Defendant Furth, is not an accurate reflection of the agreement between them.  Additionally,

7 Defendants argue that calculating Plaintiff's portion as a percentage of total gross attorneys' fees

8 recovered leads to absurd results; in some instances, The Furth Firm LLP would owe Plaintiff more

9 money in a case than it had received itself.

10                                  III. LEGAL STANDARDS

11      The standard for issuing a temporary restraining order is identical to the standard for issuing

12 a preliminary injunction.  *See Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.,* 236 F.Supp.2d

13 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887

14 F.Supp. 1320, 1323 (N.D. Cal. 1995).  "A preliminary injunction is an extraordinary remedy never

15 awarded as a matter of right."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th

16 Cir. 2011) (quoting *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 376 (2008)).  "A plaintiff

17 seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is

18 likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips

19 in his favor, and that an injunction is in the public interest."  *Id.* (quoting *Winter*, 129 S. Ct. at 374).

20 In lieu of establishing likelihood of success on the merits, the Ninth Circuit has adopted, as

21 articulated in *Alliance for the Wild Rockies*, a version of the "sliding scale" approach often referred

22 to as the "serious questions" test.  *Id.* at 1131-1132.  Under that test, a preliminary injunction is

23 warranted where a plaintiff demonstrates "serious questions going to the merits and hardship

24 balance that tips sharply toward the plaintiff...assuming the other two elements of the *Winter* test

25 are also met."  *Id.*

26      Under Federal Rule of Civil Procedure 64, a federal court may employ state law remedies for

27 attachment.  In diversity actions, a district court evaluating a motion for prejudgment attachment

28 generally applies the law of the state in which the court sits.  *See* Fed. Rul Civ. P. 64; *Granny Goose*

*Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 436-37 (1974); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1063-64 n.13 (9th Cir. 1991).   In California, a prejudgment attachment is "a provisional remedy to aid in the collection of a money demand." *Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F.Supp.2d 1001, 1004 (C.D.Cal., 2010) (citing *Kemp Bros. Constr. Inc. v. Titan Elec. Corp.,* 146 Cal.App.4th 1474, 1476 (2007)).   To warrant attachment, the applicant must establish: (1) the claim satisfies the requirements of California Civil Code section 484.010 (the claim is based on a contract, is fixed of a readily ascertainable amount not less than $500, is unsecured, and is commercial); (2) the claim upon which the attachment is based is one upon which an attachment may be issued; (3) the applicant has established the probable validity of the claim upon which the attachment is based; (4) the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based; and (5) the amount to be secured by the attachment is greater than zero. Cal. Code Civ. P. § 484.090(a).   Given that it is such a harsh remedy, the requirements for an attachment are "strictly construed against the applicant." *Blastrac, N.A.*, 678 F.Supp.2d. at 1004.   The burden is on the applicant, therefore, to establish each element necessary for an attachment order by a preponderance of the evidence. *Id*. (citing *Loeb & Loeb v. Beverly Glen Music, Inc.,* 166 Cal.App.3d 1110, 1116 (1985)).

IV. DISCUSSION

A. <u>Temporary Restraining Order</u>

While Plaintiff filed his Ex Parte Application for Temporary Writ of Attachment pursuant to Federal Rule of Civil Procedure 65, his Application and reply brief fail to address the recent Ninth Circuit decision outlining the standard for preliminary injunctions and temporary restraining orders. *See Alliance for the Wild Rockies*, 632 F.3d at 1131 (quoting *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 376 (2008)).   In particular, Plaintiff's submissions do not discuss how the Court should apply the Ninth Circuit's "serious questions" test, under which prejudgment injunctive relief is warranted where a plaintiff demonstrates "serious questions going to the merits and hardship balance that tips sharply toward the plaintiff…assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies*, 632 F.3d at 1131-32.   Nor do his papers establish any

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    facts that would demonstrate a sharp tipping in his favor of the balance of hardships; instead, he

2    simply includes a seven paragraph affidavit that make a series of generalized allegations but falls

3    short of establishing a threat of any irreparable injury.  Simply put, and as conceded at oral

4    argument, Plaintiff's request under Federal Rule of Civil Procedure 65 has been abandoned, and

5    therefore must be denied.  The Court, then, applies only the California law for a writ of attachment

6    in evaluating Plaintiff's request for prejudgment injunctive relief.

7          B. <u>Writ of Attachment</u>

8          Defendants object to Plaintiff's Motion for Writ of Attachment on two grounds.  They argue

9    first that he has not shown the probable validity of his claim, and second that his request for an

10    attachment is sought for a purpose other than recovery of the claim upon which the attachment is

11    based.

12          In order to establish the "probable validity" of a claim, the applicant for a writ of attachment

13    "must show it is more likely than not that it will obtain a judgment against the defendant." *Blastrac,*

14    *N.A.*, 678 F.Supp.2d. at 1005 (citing Cal. Code Civ. P. § 481.190).  The Court's duty in evaluating a

15    motion for writ of attachment is to consider "the relative merits of the positions of the respective

16    parties and make a determination of the probable outcome of the litigation." *Id.* (citing *Loeb &*

17    *Loeb,* 166 Cal.App.3d at 1120).  Moreover, "[i]f an applicant fails to rebut a factually-supported

18    defense that would defeat its claims, the applicant has not established probable validity" of those

19    claims. *Id.* at 1005.  In other words, Plaintiff must do more here than establish a prima facie case

20    for breach of contract; he "must also show that the defenses raised are 'less than fifty percent likely

21    to succeed.'" *Id.* (citations omitted).

22          The Court begins by noting that this case is in its early stages.  The parties have conducted

23    little, if any, discovery.  There are numerous unanswered legal and factual questions.  For example,

24    although Defendants raise questions about contract law interpretation and the Court's ability to

25    consider extrinsic evidence, Plaintiff makes no effort to respond to these key legal questions.

26    Moreover, Plaintiff has not developed the facts surrounding the extrinsic evidence offered by

27    Plaintiff in the form of emails and the Christian Declaration.  He merely offers the emails and

28    Declaration themselves, and invites the Court to draw inferences about the circumstances in which

1    they were created, and what people intended to convey through them.  Plaintiff glosses over the

2    provision of the Settlement Agreement that requires that alterations and amendments be

3    memorialized in a "further writing signed by all Parties hereto."  Mason Decl., Exh. 1.  Plaintiff

4    appears to imply that the Christian Declaration meets this contractual requirement, even though it

5    was not signed by any of the parties to the contract.  Given all of these legal and factual gaps,

6    Plaintiff falls short of meeting his burden of establishing "probable validity" to support the issuance

7    of a prejudgment writ of attachment.

8           Instead, Plaintiff's seminal arguments in support of the probable validity of his claim rest on

9    application of judicial estoppel and *res judicata*.  In essence, Plaintiff argues that the Christian

10   Declaration filed in the *Savaglio* case bars Defendant from presenting any competing interpretation

11   of the Settlement Agreement.  Both arguments are unpersuasive.

12          In determining whether the Court should exercise its discretion to invoke the equitable

13   doctrine of judicial estoppel, courts "typically consider (1) whether a party's later position is 'clearly

14   inconsistent' with its original position; (2) whether the party has successfully persuaded the court of

15   the earlier position, and (3) whether allowing the inconsistent position would allow the party to

16   'derive an unfair advantage or impose an unfair detriment on the opposing party.'"  *U.S. v. Ibrahim*,

17   522 F.3d 1003, 1009 (9th Cir. 2008) (citations omitted).  None of the evidence presented to the

18   Court thus far, however, demonstrates that "a *party's* position is 'clearly inconsistent' with its

19   original position" or that "the party has successfully persuaded the court of the earlier position."

20   Indeed, given that the Declaration was drafted and signed by Michael Christian, and that Defendants

21   argue they never adopted the language in paragraph 12 as somehow amending the Settlement

22   Agreement, it is not clear that the Christian Declaration can be considered as part of Defendants'

23   "original position" vis-à-vis Plaintiff's interest under the Settlement Agreement.[3]

24

25   ───────────────
     [3] Additionally, Defendants argue that the Christian Declaration's interpretation of the Settlement
26   Agreement was inaccurate, that those inaccuracies were caused by Plaintiff's actions, and that
     Defendants are not barred from asserting the correct interpretation. "Judicial estoppel 'seeks to
27   prevent the *deliberate* manipulation of the courts,' and therefore should not apply 'when a party's
     prior position was based on inadvertence or mistake.'"  *Ibrahim*, 522 F.3d at 1009 (citing *Helfand v.
28   Gerson*, 105 F.3d 530, 536 (9th Cir.1997).  Plaintiff has not, by a preponderance of the evidence,
     rebutted Defendants' affirmative defense that the Christian Declaration was a mistake.

**United States District Court**
For the Northern District of California

1       Moreover, there is no evidence that the terms described in the Christian Declaration were

2   litigated in *Savaglio* such that this Court could find that "the party has successfully persuaded the

3   court of the earlier position."  The Christian Declaration supported the fee application of all

4   plaintiffs' counsel in order for the *Savaglio* Court to consider of the overall fairness of a proposed

5   class settlement.  There is no evidence that the *Savaglio* Court made any adjudication regarding the

6   terms of the Settlement Agreement, or whether the description in the Christian Declaration was an

7   accurate interpretation of the Settlement Agreement.  Nor has Plaintiff presented any authority

8   supporting the notion that the content of a California Rule of Court 3.769 declaration is deemed to

9   have been litigated and a court "successfully persuaded" regarding its content.  On this record, the

10  Court declines to exercise its discretion to invoke judicial estoppel to hold that the terms of the

11  agreement set forth in the Christian Declaration govern the interpretation of the Settlement

12  Agreement.

13      Finally, in his reply brief, Plaintiff argues for the first time[4] that Defendants are prohibited

14  by operation of *res judicata* from offering any contractual interpretation that contradicts the

15  Christian Declaration.  In support of this argument, Plaintiff cites *Mark v. Spencer*, 166 Cal. App.

16  4th 219, 224 (2008).  As the Supreme Court has held, "[d]ifferences in procedures [ ] in prior state

17  proceedings in different cases may affect the degree to which federal courts should apply res

18  judicata."  *Castorr v. Brundage*, 459 U.S. 928, 929 n. 2 (1982).  The Supreme Court noted that the

19  application of *res judicata* is not mandatory in every case where its elements are met, stating that

20  "[res judicata is] an expression of the policy of federal courts preferring finality, i.e., that litigation

21  at some time must become final.  In the face of more important federal policies, however, the

22  preference for finality might be outweighed by more compelling considerations."  *Id*. at 929-30.

23      In *Mark*, the opposing parties served as co-counsel representing plaintiffs in a class action

24  lawsuit.  They entered into a written agreement which provided that they would evenly split any

25  attorneys' fees generated in the case, even if counsel were required to submit individual fee

26  applications.  The agreement explicitly contemplated that the lawyers would have equal

27

28  _____
    [4] It was improper for Plaintiff to raise this argument for the first time on reply.  Therefore, the Court
    grants Defendants' request to file its sur-reply as part of the record in this case.

**United States District Court**
For the Northern District of California

1   responsibilities and duties in the litigation, and that if either attorney failed to perform his

2   reasonable share of the joint representation, the parties would renegotiate the fee split.  Counsel later

3   sought approval of a class action settlement, which included a lump-sum attorneys' fee award.

4   Counsel submitted two separate declarations in support of the fee award.  Neither of the declarations

5   disclosed counsel's fee-splitting agreement, as required by California Rule of Court 3.769(b).  The

6   approving court held that Spencer was entitled to $401,275.43, and Mark was entitled to $76,470.

7   Mark then sued Spencer, attempting to enforce the 50-50 split set forth in their written fee

8   agreement.

9         The *Mark* court held that the failure to disclose the fee-splitting agreement as required by

10   California Rule of Court 3.769 barred Mark from enforcing the agreement to override the court's fee

11   award.  The court held that "Rule 3.769 would be effectively nullified if attorneys could conceal a

12   fee-splitting agreement from the court in seeking approval of a class action settlement and later

13   enforce the agreement in a separate action."  *Id.*, 166 Cal. App. 4th at 223.  The court went on to

14   hold "[a]s a separate and independent basis… [that] Mark's claims are barred by res judicata

15   [because] Mark was provided a fair opportunity to litigate the fee-splitting agreement before the

16   court in the class action.  Because the class action fully and finally determined the attorneys'

17   respective entitlement to fees, Mark may not relitigate the issue here."  *Id.*

18         *Mark* is distinguishable.  First, counsel in *Mark* utterly failed to submit any documentation to

19   the class action court regarding their fee-splitting arrangement, in direct violation of Rule 3.769.  *Id.*

20   at 224.  The California Court of Appeals found that this failure to disclose the fee-splitting

21   arrangement with the class action court precluded a breach of contract claim because "[t]o fulfill its

22   role in protecting absent class members, the class action court must consider the potential effect of a

23   fee-splitting agreement *before* approving a proposed settlement."  *Id.* at 228 (emphasis in original).

24   By contrast, the *Savaglio* lawyers did disclose the fee-splitting arrangement through a Rule 3.769

25   declaration.  However, Defendants argue that the description of the fee agreement -- which was

26   added into the Christian Declaration by Plaintiff himself -- was inaccurate.  At this early stage of the

27   litigation, factual gaps remain as to how the Christian Declaration was amended to add the

28   descriptions of the fee agreement, and whether the amendments were reviewed or approved.

United States District Court
For the Northern District of California

*Mark* is also distinguishable with respect to its application of *res judicata*. *Mark* stated that "[t]he doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Id*. at 229. The court then went on to find that "[t]he relative entitlement of Mark and Spencer to attorney fees was fully considered and finally determined by the court." The *Mark* Court specifically noted the trial court's finding that the contribution of the lawyers was asymmetrical:

> For example, at the hearing on the fee petition, the court noted to Spencer: '"I felt Mr. Mark's records were somewhat short of the mark, and I concluded that perhaps his work on the case was not as significant or valuable as yours and that some of the work that he did on the case might not justify that portion of the claim. [¶] I had [little] or virtually no concern about your claim in terms of the hours and the work. … But I do have concern, and I think it would be reflective when I finally put the final touch on this as a concern for Mr. Mark's records and Mr. Mark's work on the case and also the justification for these enhancements."

*Id*., 166 Cal. App. 4th at 230. This asymmetry ran contrary to the underlying written fee agreement that contemplated an equal split of fees for equal efforts in litigating the case.

By contrast, there is nothing in the record here to indicate that the *Savaglio* Court adjudicated, or even considered the fee arrangement between Plaintiff and Defendant Furth, or engaged in an in-depth examination of the relative contributions of the individual lawyers to the results achieved in that case. Plaintiff argues that *Mark* stands for the proposition that any description of a fee agreement in a declaration submitted pursuant to California Rule of Court 3.769(b), *even if inaccurate or mistaken*, must dictate the terms of that agreement by operation of law. This stretches the holding in *Mark* beyond its contextual boundaries.

In sum, given the competing contract interpretations and calculations of amounts due Plaintiff, as well as Plaintiff's inability to establish that judicial estoppel or *res judicata* should apply, Plaintiff has not satisfied his burden of demonstrating the probable validity of his claims by a preponderance of the evidence. Plaintiff's failure to address basic tenets of contractual interpretation, combined with the limited factual record thus far, prevents the Court from considering the relative merits of the positions of the parties and making a determination of the probable outcome of the litigation. *See Blastrac, N.A.*, 678 F.Supp.2d. at 1005. Plaintiff's Motion

for a Writ of Attachment is therefore denied, except with respect to the amounts concededly owed by Defendants.[5]

### V. CONCLUSION

For the reasons stated above, Plaintiffs Ex Parte Application for Temporary Writ of Attachment is denied.  Plaintiff's Motion for Writ of Attachment is granted in part, in the amount of $385,925.40.  This is the amount that Defendants concede is owed to Plaintiff.  The contract provides for "seven percent annual compounded interest" on monies due but unpaid.  Mason Decl., Exh. 1.  By no later than June 2, 2011, Defendant shall submit a letter brief setting forth why the Writ of Attachment should not include contractual interest on the $385,925.40 or, in the alternative, what the amount of that interest should be. By no later than June 9, 2011, Plaintiff shall submit a responsive letter brief.  The letter briefs may not exceed 2 ½ pages. The matter regarding interest will be deemed submitted on the papers, and the Court will make any appropriate adjustment to the amount subject to the Writ of Attachment.

IT IS SO ORDERED.

Dated: May 31, 2011

_____
DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE

---

[5] Because Defendants contest only these two elements of Plaintiff's motion, the Court need not address the other elements of a writ of attachment under California law (whether Plaintiff's claim satisfies the requirements of California Civil Code section 484.010, is one upon which an attachment may be issued, or is for an amount greater than zero).  Moreover, given that Plaintiff has not shown the probable validity of his claims, the Court need not reach the question of whether his request for an attachment is sought for a purpose other than recovery of the claim upon which the attachment is based